## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| A VILLAGE YOUTH AND FAMILY SERVICES, INC., ADJUST TO LIFE BEHAVIORAL SERVICES, LLC, BEHAVIORAL HEALTH SERVICES OF VIRGINIA, B&W SUPPORTIVE COUNSELING GROUP, LLC, CIVITAS HEALTH SERVICES, INC., COMMONWEALTH CENTER FOR FAMILY SERVICES, INC., FAMILY GUIDANCE OF VIRGINIA, INC., FUTURE GENERATION YOUTH SERVICES, LLC, GROWN, LLC, HANDS OF UNITY, LLC, HEALING INTERVENTIONS, INC., HARGROVE, OLIVER, & PARKER, INC., HYPE COUNSELING SERVICES, LLC, KEY INDEPENDENT DEVELOPMENT SERVICES, LEADERS FOR LIFE, INC., LIFE LESSONS FAMILY SERVICES, LLC, LIFE SERVICES, INC., MENTAL HEALTH EXPERIENCE SUPPORTIVE SERVICES, MINKS YOUTH AND FAMILY SERVICES, LLC, NDUTIME YOUTH & FAMILY SERVICES, INC., NEW GROWTH BEHAVIORAL HEALTH, LLC, NEW LIFE, LLC, ONESOURCE COMMUNITY MENTAL HEALTH SERVICES OF VA, INC., SECOND CHANCES COMPREHENSIVE SERVICES, LLC, SIMPLE INTERVENTIONS, LLC, STRATEGIC YOUTH SERVICES, LLC, SUCCOR BEHAVIORAL SERVICES, LLC, TAG, INC., THERAPEUTIC APPLICATION PRACTICE, LLC, VIRGINIA FAMILY SERVICES, INC., WE HELP OUR ADOLESCENTS, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:<br><br><br><br>**PLAINTIFF'S COMPLAINT**<br><br><br><br><br><br><br>**Jury Trial Demand** |
| Plaintiffs, | )<br>) | |
| v. | ) | |

|  | ) |
|---|---|
| THE COMMONWEALTH OF | ) |
| VIRGINIA, RALPH NORTHAM, in his | ) |
| official capacity as Governor of the | ) |
| Commonwealth of Virginia, DANIEL | ) |
| CAREY, in his official capacity as the | ) |
| Secretary of Virginia Health and Human | ) |
| Services, JENNIFER LEE and KAREN | ) |
| KIMSEY, in her official capacity as the | ) |
| Director of Virginia Health and Human | ) |
| Services, VIRGINIA HEALTH AND | ) |
| HUMAN SERVICES, THE VIRGINIA | ) |
| DEPARTMENT OF SOCIAL SERVICES, | ) |
| AETNA BETTER HEALTH OF | ) |
| VIRGINIA, MAGELLAN COMPLETE | ) |
| CARE OF VIRGINIA, INC., | ) |
| UNITEDHEALTHCARE COMMUNITY | ) |
| PLAN, VIRGINIA PREMIER HEALTH | ) |
| PLAN, INC., ANTHEM BLUECROSS | ) |
| BLUESHIELD, OPTIMA HEALTH | ) |
| INSURANCE COMPANY, | ) |
|  | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs A Village Youth and Family Services, Inc. ("A Village"), Adjust to Life Behavioral Services, LLC, ("Adjust to Life"), Behavioral Health Services of Virginia, ("Behavioral Health Services of Virginia") B & W Supportive Counseling  Group, LLC, ("B&W"), Civitas Health Services, Inc., ("Civitas"), Commonwealth Center for Family Services, Inc., ("Commonwealth Center"), Family Guidance of Virginia, Inc., ("Family Guidance"), Future Generation Youth Service, LLC, ("Future Generation"), Hands of Unity, LLC, ("Hands of Unity"), Healing Interventions, Inc., ("Healing Interventions"), Hargrove, Oliver, & Parker, Inc., ("HOPE"), Hype Counseling Services, Inc., ("Hype"), Independent Living Solutions ("Independent Living"), Key Independent Development Services ("Key Independent"), Leaders for Life, Inc., ("Leaders for Life"), Life Lessons Family Services, LLC, ("Life Lessons"), Life

Services, Inc., ("Life Services"), Mental Health Experience Supportive Services ("Mental Health Experience"), NDUTIME Youth & Family Services, Inc., ("NDUTIME"), New Growth Behavioral Health, LLC, ("New Growth"), New Life, LLC, ("New Life"), Onesource, ("Onesource"), Second Chances Comprehensive Services, LLC, ("Second Chances"), Simple Interventions, LLC, ("Simple Interventions"), Strategic Youth Services, LLC, ("Strategic Youth"), Succor Behavioral Services, LLC, ("Succor"), Tag, Inc., ("Tag"), Therapeutic Application Practice, LLC, ("TAP"), We Help Our Adolescents, LLC, (WHOA"), Yes Behavioral Services, (Yes"), Youth and Family Dynamics In Home Services, LLC, ("Youth and Family Dynamics"), (collectively, the "Providers"), and John Doe ("J.D.") and Jane Doe ("J.D.2,")[1] (collectively, the "Patients"), and (collectively, the Patients and the Providers, "Plaintiffs") bring this Complaint against the above-named Defendants in their official capacity, and in support thereof state the following:

## PRELIMINARY STATEMENT

1.      This civil action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the federal Medicaid statutes and the Fourteenth Amendment to the United States Constitution.

2.      For a collaborative amount of over fifty (50) years, the Providers have provided critically needed behavioral health care services including mental health case management, therapeutic day treatment ("TDT") for children, day treatment / partial hospitalization for adults, crisis intervention and stabilization, intensive community treatment, mental health skill-building services (MHSS), intensive in-home ("IIH"), psychosocial rehab ("PSR"), mental health peer support services (individual), and mental health peer support services (group) to residents of

---

[1] Medicaid recipients will be named in an amended Complaint after a Protective Order is granted.

Virginia through the Medicaid program, which is the State health insurance program covering Virginia's neediest population. As is required by federal law, Medicaid enrollees may seek services from a participating provider of their choice and have those services covered by Medicaid.

3.    For most of the past twenty-five+ (25+) years, the Providers have been Medicaid-eligible providers of those services in the Commonwealth of Virginia. The Providers have offered Virginia Medicaid recipients a robust and diverse provider selection.

4.    The Patients – John and Jane Doe – are Medicaid recipients and patients of the Providers.

5.    Approximately 100 percent of the Providers' patients are Medicaid beneficiaries.

6.    The Commonwealth of Virginia, Division of Medicaid Assistance Services ("DMAS"), acting as the single state agency charged with managing Medicaid for the Commonwealth of Virginia, contracted with managed care organizations ("MCOs"): Virginia Premier, Aetna, Anthem, and Magellan.

7.    The MCOs informed the Providers that the Provider's Medicaid provider participation agreements were terminated without cause effective various dates.

8.    The MCOs informed the Providers that the Provider's Medicaid provider participation agreements were terminated without cause effective various dates.

  a.  Aetna terminated A Village Youth and Family Services, Inc., by letter received on or around July 25, 2019, effective October 1, 2019;

  b.  An MCO terminated Adjust to Life Behavioral Services, LLC;

  c.  Anthem terminated Behavioral Health Services of Virginia by letter dated July 18, 2019, effective November 30, 2019;

d.  Aetna terminated B&W Supportive Counseling Group, LLC by letter dated August 21, 2019, effective October 21, 2019;

e.  Aetna terminated Civitas Health Services, Inc. by letter dated August 1, 2019, effective October 1, 2019;

f.  Anthem terminated Civitas Health Services, Inc. by letter dated July 18, 2019, effective November 30, 2019;

g.  An MCO terminated Commonwealth Center for Family Services, Inc.;

h.  An MCO terminated Family Guidance of Virginia, Inc.;

i.  Aetna terminated Future Generations Youth Services by letter dated July 25, 2019, effective September 25, 2019;

j.  Magellan terminated Future Generations Youth Services by letter dated July 26, 2019, effective October 26, 2019;

k.  Anthem terminated Hands of Unity, LLC, effective November 30, 2019;

l.  Aetna terminated Hands of Unity, LLC by letter dated July 25, 2019, effective September 25, 2019;

m.  Aetna terminated Hargrove, Oliver & Parker, Inc. d/b/a Hope, Inc. by letter dated September 2, 2019, effective November 2, 2019;

n.  An MCO terminated Healing Interventions, Inc.

o.  United Healthcare terminated Hype Youth Services d/b/a Hype Counseling Services by letter dated August 21, 2019, effective November 21, 2019;

p.  An MCO terminated Independent Living Solutions;

q.  Aetna terminated Key Independent Development Services by letter dated September 2, 2019, effective November 2, 2019;

r.  Anthem terminated Key Independent Development Services by letter dated on or about July 25, 2019, effective November 30, 2019;

s.  Aetna terminated Leaders for Life, Inc. by letter dated September 2, 2019, effective November 2, 2019;

t.  Virginia Premier terminated Life Lessons Family Services, Inc. by letter dated July 29, 2019, effective October 31, 2019;

u.  Aetna terminated Life Services, Inc. by letter dated September 2, 2019, effective November 2, 2019;

v.  An MCO terminated Mental Health Experience Supportive Services;

w.  Aetna terminated NDUTIME Youth and Family Services, Inc., by letter dated September 2, 2019, effective November 2, 2019;

x.  Virginia Premier terminated New Growth Behavioral Health, LLC by letter received on or around July 29, 2019, effective October 31, 2019;

y.  United Healthcare terminated New Life, Inc., effective November 21, 2019;

z.  An MCO terminated ONESOURCE;

aa. Virginia Premier terminated Second Chances Comprehensive Services, LLC, effective October 31, 2019;

bb. Aetna terminated Simple Interventions, LCC by letter received on or around September 3, 2019, effective November 2, 2019;

cc. An MCO terminated Strategic Youth Services, LLC;

dd. Anthem terminated Succor Behavioral Services, LLC by letter dated July 25, 2019, effective October 31, 2019;

ee. Virginia Premier terminated Succor Behavioral Services, LLC, effective October 31, 2019;

ff. Aetna terminated Tag, Inc. by letter dated September 2, 2019, effective November 2, 2019.

gg. Virginia Premier terminated Therapeutic Application Practice, LLC. by letter received on or around July 29, 2019, effective October 31, 2019;

hh. Virginia Premier terminated We Help Our Adolescents, LLC by letter received on or around July 29, 2019, effective October 31, 2019;

ii. An MCO terminated Yes Behavioral Health;

jj. An MCO terminated Youth and Family Dynamics In Home Services, LLC.

9.    Defendants' arbitrary and capricious actions have caused the Providers significant damages, turmoil within the community and with the Providers' patients. If this Preliminary Injunction is not granted, the Providers are at imminent risk of closing their businesses, and their Medicaid patients (including the Patients) are at imminent risk of losing their health care providers and access to medically necessary services.

10.    Plaintiffs seek declaratory and injunctive relief to protect the Providers' patients' access to – and the Providers ability to provide – these critical medical services. Defendants' actions are in direct violation of the Patients' express statutory right to freely choose their own qualified Medicaid provider under Section 1396a(a)(23) of Title 42 of the United States Code (the "Medicaid freedom of choice provision"). In particular, by barring the Providers from the Medicaid program, the Defendants are preventing the Providers' Patients from receiving services from the qualified, willing provider of their choice.

11.     Unless enjoined, the termination of the Providers' Medicaid provider agreements will disqualify the Providers from providing critical health care services to Virginia residents who depend on the Providers for their care. Of note, Defendants' actions are already causing significant and irreparable harm to the Providers and their Medicaid patients, who will lose their provider of choice, and will find their medical services interrupted. Providers and its Patients have no adequate remedy at law.

## JURSIDICTION AND VENUE

12.     This Court possesses proper subject matter and personal jurisdiction over the parties. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.

13.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

14.     Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 in that Defendants are located in this State and District, and a substantial part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

**A.     Plaintiffs**

15.     Plaintiff A Village Youth and Family Services, Inc. ("A Village") is the company owned and operated by Dr. Khidhra Poole, located in Richmond, VA, and is the location that A Village's patients present themselves from counties throughout Virginia.

16.     Plaintiff Behavioral Health Services of Virginia ("Behavioral Health Services") is the company owned and operated by Mr. Demario Adkins and Ms. DeJuna Adkins, located in

Glen Allen, VA, and is the location that Behavioral Health Services' patients present themselves from counties throughout Virginia.

17.    Plaintiff B & W Supportive Counseling Group, LLC ("B & W") is the company owned and operated by Ms. Sherri Wallace, Ms. Teri Moody, and Ms. Laurel Borrel, located in Mechanicsville, VA, and is the location that B & W's patients present themselves from counties throughout Virginia

18.    Plaintiff Civitas Health Services, Inc. ("Civitas") is the company owned and operated by Mr. LeMar Bowers, located in Richmond, VA, and is the location that Civitas' patients present themselves from counties throughout Virginia.

19.    Plaintiff Commonwealth Center for Family Services ("Commonwealth Center") is the company owned and operated by Mr. Brent Thompson, located in Moseley, VA, and is the location that Commonwealth Center's patients present themselves from counties throughout Virginia.

20.    Plaintiff Family Guidance of Virginia, Inc. ("Family Guidance") is the company owned and operated by Mr. Richard Mason, located in North Chesterfield, VA, and is the location that Family Guidance's patients present themselves from counties throughout Virginia.

21.    Plaintiff Future Generations Youth Services, LLC. ("Future Generations") is the company owned and operated by Ms. Evelyn Brenyah, located in Richmond, VA, and is the location that Future Generations' patients present themselves from counties throughout Virginia.

22.    Plaintiff Hands of Unity, LLC. ("Hands of Unity") is the company owned and operated by Mr. Mike Pearson, Senior, located in Richmond, VA, and is the location that Hands of Unity's patients present themselves from counties throughout Virginia.

23.     Plaintiff Hargrove, Oliver, & Parker, Inc. ("HOPE") is the company owned and operated by Dennis Parker, Ph.D, Vernon Oliver, LCSW, JD, and James Hargrove located in Richmond, VA, and is the location that HOPE's patients present themselves from counties throughout Virginia.

24.     Plaintiff Healing Interventions, LLC. ("Healing Interventions") is the company owned and operated by Ms. Yolanda Moore, located in Richmond, VA, and is the location that Hype's patients present themselves from counties throughout Virginia.

25.     Plaintiff Hype Youth Services d/b/a Hype Counseling Services, LLC. ("Hype") is the company owned and operated by Mr. William Jones, located in Richmond, VA, and is the location that Hype's patients present themselves from counties throughout Virginia.

26.     Plaintiff Key Independent Development Services ("Key Independent") is the company owned and operated by Mr. Malcolm Moody, located in Herrico, VA, and is the location that Key Independent's patients present themselves from counties throughout Virginia.

27.     Plaintiff Life Lessons Family Services. ("Life Lessons") is the company owned and operated by Ms. Victoria Owens, located in Richmond, VA, and is the location that Life Lesson's patients present themselves from counties throughout Virginia.

28.     Plaintiff Life Services, Inc. ("Life Services") is the company owned and operated by Mr. David L. Williams, located in Richmond, VA, and is the location that Life Service's patients present themselves from counties throughout Virginia.

29.     Plaintiff NDUTIME Youth and Family Services, Inc. ("NDUTIME") is a non-profit company operated by Ms. Teshana Gipson, located in Richmond, VA, and is the location that NDUTIME's patients present themselves from counties throughout Virginia.

30.    Plaintiff New Growth Behavioral Health, LLC. ("New Growth") is the company owned and operated by Mr. Kevin Bailey and Ms. Erika Jackson-Bailey, located in Chester, VA, and is the location that New Growth's patients present themselves from counties throughout Virginia.

31.    Plaintiff New Life, LLC. ("New Life") is the company owned and operated by Mr. Richard Roman, located in Newport News, VA, and is the location that New Life's patients present themselves from counties throughout Virginia.

32.    Plaintiff Second Chances Comprehensive Services, LLC. ("Second Chances") is the company owned and operated by Mr. Damion and Ms. Tanikka Mason, located in Hopewell, VA, and is the location that Second Chances' patients present themselves from counties throughout Virginia.

33.    Plaintiff SUCCOR Behavioral Services, LLC. ("SUCCOR") is the company owned and operated by Mr. Derman Spragg, located in Richmond, VA, and is the location that SUCCOR's patients present themselves from counties throughout Virginia.

34.    Plaintiff Tag, Inc. ("Tag") is the company owned and operated by Jaquan Winston, located in Henrico, VA, and is the location that Tag's patients present themselves from counties throughout Virginia.

35.    Plaintiff Therapeutic Application Practice, LLC. ("Therapeutic") is the company owned and operated by Mr. Emerson Lopez, located in Richmond, VA, and is the location that Therapeutic's patients present themselves from counties throughout Virginia.

36.    Plaintiff We Help Our Adolescents, LLC ("WHOA") is the company owned and operated by Larry Pope, located in Glen Allen, VA, and is the location that WHOA's patients present themselves from counties throughout Virginia.

37.     Plaintiff Strategic Youth Services ("Strategic") is the company owned and operated by Shana L. Watson, located in Richmond, VA, and is location that Strategic's patients present themselves from counties throughout Virginia.

38.     Plaintiff John Doe is a minor citizen of the United States and a resident of Virginia, and at all times relevant herein was a patient of Providers.

39.     Plaintiff Jane Doe is a minor citizen of the United States and a resident of Virginia, and at all times relevant herein was a patient of Providers.

**B.     Defendants**

40.     Defendant Daniel Carey, M.D., is or was at all times mentioned herein the Secretary of Medicaid for the Virginia DMAS. Dr. Carey is sued in his official capacity as Secretary of Medicaid for the Virginia DMAS for declaratory and injunctive relief.

41.     Defendants Jennifer Lee[2] and Karen Kimsey is or was at all times mentioned herein the Director of Medicaid for the Virginia DMAS. Ms. Kimsey is sued in her official capacity as Director of Medicaid for the Virginia DMAS for declaratory and injunctive relief.

42.     DMAS is the single state agency charged with managing Virginia Medicaid. 42 C.F.R. §431.10.

43.     Aetna Better Health of Virginia ("Aetna") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. Aetna must adhere to all state and federal Medicaid rules and regulations, including the Affordable Care Act ("ACA").

---

[2] Ms. Lee is stepping down as Secretary of DMAS, effective October 9, 2019. Ms. Kimsey will be her replacement.

44.     Magellan Complete Care of Virginia, Inc. ("Magellan") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. Magellan must adhere to all state and federal Medicaid rules and regulations, including the Affordable Care Act ("ACA").

45.     Optima Health Insurance Company ("Optima") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. Optima must adhere to all state and federal Medicaid rules and regulations, including the ACA.

46.     UnitedHealthCare ("United") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. United must adhere to all state and federal Medicaid rules and regulations, including the ACA.

47.     Virginia Premier Health Plan, Inc. ("Virginia Premier") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. Virginia Premier must adhere to all state and federal Medicaid rules and regulations, including the ACA.

48.     Anthem BlueCross BlueShield ("Anthem") is a managed care organization ("MCO") that provides health care policies for the Commonwealth of Virginia under the Medicaid program for behavioral health care services. Anthem must adhere to all state and federal Medicaid rules and regulations, including the ACA.

49.     Anthem, Virginia Premier, Aetna, Magellan, Optima and United, collectively, will be referred to as "Defendant-MCOs."

50.     The Defendants acted in bad faith and contrary to established law and principles of constitutional and statutory law.

51.     Plaintiffs are informed and believe and thereon allege that each of the Defendants caused, and is liable for the unconstitutional and unlawful conduct and resulting injuries by, among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing or setting in motion actions that led to the unlawful conduct and/or by ratifying the unlawful conduct taken by employees under their direction and control. Defendants' actions were taken pursuant to policies, customs or usages of DMAS.

## THE MEDICAID PROGRAM

52.     The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq*., pays for medical care provided to eligible people based upon their income. A State may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the United States Department of Health and Human Services ("HHS") in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)-(83).

53.     In order to receive federal funding, a participating State must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a).

54.     Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance…may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required…who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

55.     For decades, the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that administers Medicaid (and its predecessor organization), has repeatedly

interpreted the "qualified" language in 42 U.S.C. § 1396a(a)(23) to prohibit states from denying enrollees access to a provider for reasons unrelated to the ability of that provider to perform Medicaid-covered services or to properly bill for those services, including reasons such as the scope of the medical services that the provider chooses to offer.

56.    CMS has explained that "[t]he purpose of the free choice provision is to allow [Medicaid] recipients the same opportunities to choose among available providers of covered health care and services as are normally offered to the general population." Ctrs. For Medicare & Medicaid Servs, CMS Manuals Publication #45, State Medicaid Manual § 2100.

57.    Consistent with this understanding, HHS has a long history of rejecting state plans that seek to limit the type of provider that can provide particular services. *See, e.g.,* 53 Fed. Reg. 8699 (Mar. 16, 1988) (noting rejection of plan that would limit providers to "private nonprofit" organizations); 67 Fed. Reg. 79121 (Dec. 27, 2002) (noting disapproval of a state plan amendment that would have limited "*beneficiary* choice…by imposing standards that are not reasonably related to the qualifications of providers").

58.    More recently, CMS rejected an Indiana plan that barred state agencies from contracting with or making grants to any entities that perform abortion because it violated the Medicaid freedom of choice provision. Letter from Donald M. Berwick, Adm'r., CMS, to Patricia Casanova, Dir., Ind. Office of Medicaid Policy and Planning (June 1, 2011), http://www.politico.com/static/PPM0601_indiana_letter.html.

59.    Upon information and belief, Virginia implemented the MCO program for behavioral health care in 1996 with expansions in 2014.[3]

---

[3] Virginia's first managed care program, the MEDALLION primary care case management (PCCM), started in four pilot cities in 1993 and was expanded statewide in 1995, covering aged, blind, and disabled beneficiaries as well as low-income adults and children. During this time,

60.    According to DMAS' Section 1115 Annual Report, for Demonstration Year: 4 (01/01/2018 – 12/31/2018) ("Annual Report"), "[t]his increase in workforce opportunities with the managed care organizations has elevated an already known **workforce shortage of licensed professionals** in Virginia for both direct service providers and for Magellan of Virginia." at 8 (emphasis added); attached hereto as Ex. 1.

61.    The Annual Report states that "[m]embers have not reported any new issues concerning access to care." at 23. Obviously, the Annual Report was drafted prior to the termination of Plaintiffs.

---

Virginia also began the Options program, which, until 1999, offered beneficiaries in select regions the ability to voluntarily enroll in a managed care organization. In 1996, Virginia built on the MEDALLION and Options programs and created MEDALLION II, which covered capitated-risk based managed care in select regions initially and additional regions over time. MEDALLION II covers acute, primary, and specialty services, as well as outpatient behavioral health. Enrollment is mandatory for most children, low-income adults, and non-dual aged and disabled enrollees in most counties. Since 2001, the state contracted with one vendor to provide Non-Emergency Transportation, as a prepaid ambulatory health plan, to individuals not enrolled in an HMO.

Virginia made several changes to its managed care programs in 2005, including carving out dental services (so that they are managed by a single plan), modifying the regions in which the MEDALLION PCCM program operated, and expanding eligibility to aged, blind, and disabled beneficiaries with income up to 80% FPL. Prior to May 2012, beneficiaries in rural counties without an MCO could opt to enroll with a PCCM provider as part of the MEDALLION program. The state has since expanded MCOs statewide and terminated the MEDALLION PCCM program. Virginia also currently offers eight PACE programs, which provide all Medicaid and Medicare services to individuals age 55 and over who meet a nursing home level of care.

In January 2014 Virginia received approval to launch a State Plan Amendment that allows for voluntary enrollment of duals into managed care and is the companion to the Duals Demonstration. The Medicare-Medicaid Financial Alignment Demonstration in which Virginia will participate in a three-year Demonstration that allows the State to enroll individuals eligible for both Medicare and Medicaid benefits and supplementary services through a seamless integrated program.

62.    Furthermore, the Commonwealth of Virginia Department of Medical Assistance Services' 2017 – 2019 Quality Strategy ("Quality Strategy") touts that "[t]he Quality Strategy promotes the identification of creative initiatives to continually monitor, assess, and **improve access to care**, and quality, satisfaction, and timeliness of services for Virginia Medicaid and CHIP recipients." at 2 (emphasis added); attached hereto as Ex. 2.

**DEFENDANTS' TERMINATION OF THE PROVIDERS**
**FROM THE VIRGINIA MEDICAID PROGRAM**

**A.    2019 Terminations by MCOs**

63.    In correspondence dated July 25, 2019, Anthem terminated Key Independent's Medicaid contract, NPI 1720429889, purportedly effective November 30, 2019. However, Anthem's termination went into effect August 23, 2019, which is when Key Independent ceased receiving Medicaid reimbursements. The termination notice states the reason for termination is "without cause." Anthem constitutes approximately 60% of Key Independent's reimbursements. Without a Medicaid contract with Anthem, Key Independent will go out of business. The owner of Key Independent, Mr. Malcolm Moody, is African American.

64.    In correspondence dated September 2, 2019, Aetna terminated Key Independent's Medicaid contract, NPI # 1720429889, effective November 2, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 10% of Key Independent's reimbursements for a total of approximately 70% of Key Independent's revenue (with Anthem). Without a Medicaid contract with Aetna, Key Independent will go out of business. The owner of Key Independent is African American.

65.    In correspondence dated July 18, 2019, Anthem terminated Behavioral Health Services of Virginia's Medicaid contract, NPI # 1033454657, effective November 30, 2019. The termination notice states the reason for termination is "without cause." Anthem constitutes over

60% of Behavioral Health Services of Virginia's reimbursements. Without a Medicaid contract with Anthem, Behavioral Health Services of Virginia will go out of business. The co-owners of Behavioral Health Services of Virginia, Demario Adkins and DeJuna Adkins, are African American.

66.    In correspondence dated July 25, 2019, Aetna terminated Hands of Unity's Medicaid contract, NPI # 1215388350, effective September 25, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 15% of Hands of Unity's reimbursements. Without a Medicaid contract with Aetna, Hands of Unity will go out of business. In correspondence dated unknown,[4] Aetna terminated Hands of Unity's Medicaid contract, effective November 30, 2019. Upon information and belief, the termination notice states the reason for termination is "without cause." Anthem constitutes approximately 15% of Hands of Unity's reimbursements. Anthem and Aetna constitute approximately 30% of Hands of Unity's reimbursements. Without a Medicaid contract with Anthem and Aetna, Hands of Unity will go out of business. The owner of Hands of Unity, Mike Pearson, Sr., is African American.

67.    In correspondence dated July 29, 2019, Virginia Premier terminated TAP's Medicaid contract, NPI # 1861773988, effective October 31, 2019. The termination notice states the reason for termination is "without cause." Virginia Premier constitutes over 33% of TAP's reimbursements. Without a Medicaid contract with Virginia Premier, TAP will go out of business. The owner of TAP, Emerson Lopez, is African American.

---

[4] Hands of Unity never received the termination notice from Anthem. Hands of Unity contacted Anthem and requested the termination notice, which is how Hands of Unity was informed of the effective date. As of the date of this filing, Hands of Unity has not received a copy of the termination notice.

68.    In correspondence dated August 21, 2019, Aetna terminated B&W's Medicaid contract, NPI # 1578989015305, effective October 21, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 20% of B&W's reimbursements. Without a Medicaid contract with Aetna, B&W will go out of business. The three owners of B&W, Tori Moody, Laurel Borrel, and Shari Wallace, are African American women.

69.    In correspondence dated July 25, 2019, Anthem terminated Succor's Medicaid contract, NPI # 1407215098, effective November 30, 2019. In correspondence dated unknown,[5] Virginia Premier terminated Succor's Medicaid contract, effective October 31, 2019. The Anthem termination notice states the reason for termination is "without cause," and upon information and belief, the Virginia Premier termination states the reason for the termination is "without cause." Anthem constitutes approximately 20% of Succor's reimbursements; Virginia Premier constitutes approximately 25% for a total of 45% of Succor's Medicaid reimbursements. Without a Medicaid contract with Anthem and/or Virginia Premier, Succor will go out of business. The owner of Succor is African American.

70.    In correspondence dated July 29, 2019, Virginia Premier terminated New Growth's Medicaid contract, NPI # 1194196873, effective October 31, 2019. The termination notice states the reason for termination is "without cause." Virginia Premier constitutes over 20% of New Growth's reimbursements. Without a Medicaid contract with Virginia Premier, New Growth will go out of business. The owners of New Growth, Kevin Bailey and Erika Jackson-Bailey, are African American.

---

[5] Succor does not have a copy of the Virginia Premier termination.

71.    In correspondence dated July 26, 2019, Magellan terminated Future Generations' Medicaid contract[6] effective October 26, 2019. In correspondence dated July 25, 2019, Aetna terminated Future Generations' Medicaid contract, effective September 25, 2019. Both termination notices state the reason for termination is "without cause." Aetna constitutes approximately 15% of New Growth's reimbursements. Magellan constitutes approximately 5 – 6% of Future Generation's reimbursements for a total of over 20% of New Growth's Medicaid reimbursements. Without a Medicaid contract with Aetna and/or Magellan, Future Generations will go out of business.

72.    In correspondence dated September 2, 2019, Aetna terminated Life Services' Medicaid contract,[7] effective November 2, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 20% of Life Services' reimbursements. Without a Medicaid contract with Aetna, Life Services will go out of business. The owner of Life Services, David Williams, is African American.

73.    In correspondence dated September 2, 2019, Aetna terminated Leaders for Life Medicaid contract, NPI # 1154723617, effective November 2, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 40% of Leaders for Life reimbursements. Without a Medicaid contract with Aetna, Leaders for Life will go out of business. The two co-owners of Leaders for Life, Fatima Smith and Ebony Harris, are African American.

---

[6] We will amend the Complaint to include Future Generations' NPI #.
[7] We will amend the Complaint to include Life Services' NPI #.

74.    In correspondence dated August 21, 2019, Optum terminated HYPE's Medicaid contract,[8] effective November 21, 2019. The termination notice states the reason for termination is "without cause." Optum constitutes approximately 10% of Hype's reimbursements. Without a Medicaid contract with Optum, Hype will go out of business. The owner of Hype, William Jones, is African American.

75.    In correspondence dated September 9, 2019, Aetna terminated HOPE's Medicaid contract, NPI # 1134382617, effective November 2, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes over 20% of HOPE's reimbursements. Without a Medicaid contract with Aetna, HOPE will go out of business. All three owners of HOPE, Dennis Parker, Ph.D, Vernon Oliver, LCSW, JD, and James Hargrove are African American.

76.    In correspondences dated unknown,[9] Virginia Premier and Magellan terminated Second Chances Medicaid contracts,[10] effective October 31, 2019.[11] Upon information and belief, the termination notices state the reason for termination is "without cause." Virginia Premier constitutes approximately 25% of Second Chances reimbursements. Without a Medicaid contract with Aetna, Leaders for Life will go out of business. The two co-owners of Leaders for Life, Damion and Tanikka Mason, are African American.

77.    In correspondence dated September 3, 2019, Aetna terminated Simple Interventions' Medicaid contract, NPI # 1043612104, effective November 2, 2019. The

---

[8] We will amend the Complaint to include HYPE's NPI #.
[9] Second Chances never received a termination notice from Virginia Premier or Magellan, but were informed through telephonic correspondence that both contracts were terminated, effective October 31, 2019.
[10] We will amend the Complaint to include Second Chances' NPI #.
[11] As of the date of this filing, Second Chances is not getting paid for crisis stabilization, and upon information and belief, Second Chances believes that the lack of reimbursement is germane to the termination.

termination notice states the reason for termination is "without cause." Aetna constitutes approximately 16% of Simple Interventions' reimbursements. Without a Medicaid contract with Aetna, Simple Interventions will go out of business. The owner of Simple Interventions, Brandon Hudson, is African American.

78.    In correspondence dated July 29, 2019, Aetna terminated WHOA's Medicaid contract,[12] effective October 31, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 50% of WHOA's reimbursements. Without a Medicaid contract with Aetna, WHOA will go out of business. The owner of WHOA, Larry Pope, is African American.

79.    In correspondence dated July 25, 2019, Aetna terminated A Village Youth and Family's Medicaid contract, effective October 1, 2019. The termination notice states the reason for termination is "without cause."  Without a Medicaid contract with Aetna, A Village Youth and Family will go out of business. The owner of A Village Youth and Family, Dr. Khidhra Poole, is African American.

80.    In correspondence dated August 9, 2019, Aetna terminated Civitas' Medicaid contract, NPI # 1366727984, effective September 30, 2019. In correspondence dated July 19, 2019, Anthem terminated Civitas' Medicaid contract, effective November 30, 2019. Both the termination notices state the reason for termination is "without cause." Aetna constitutes approximately 12% of Civitas' reimbursements. Anthem constitutes approximately 28% of Civitas' reimbursements for a total of 40% of Civitas' Medicaid reimbursements being terminated. Without a Medicaid contract with Aetna and/or Anthem, Civitas will go out of business. The owner of Civitas, LeMar A. Bowers, is African American.

---

[12] We will amend the Complaint to include WHOA's NPI #.

81.     In correspondence dated September 2, 2019, Aetna terminated NDUTIME Medicaid contract, effective November 2, 2019. The termination notice states the reason for termination is "without cause." Aetna constitutes approximately 5% of NDUTIME reimbursements. Without a Medicaid contract with Aetna, NDUTIME will go out of business. The CEO of NDUTIME, Teshana Gipson, is African American.

82.     In correspondence dated July 29, 2019, Virginia Premier terminated Strategic's Medicaid contract, NPI # 1215211982, effective October 31, 2019. The termination notice states the reason for termination is "without cause."  Without a Medicaid contract with Virginia Premier, Strategic will go out of business. The owner of Strategic, Shana Watts, is African American.

83.     In correspondence dated September 2, 2019, Aetna terminated Healing Interventions' Medicaid contract, NPI # 1780918359, effective November 2, 2019. The termination notice states the reason for termination is "without cause." Without a Medicaid contract with Aetna, Healing Interventions will go out of business. The owner of Healing Interventions, Yolanda Moore, is African American.

84.     Defendant-MCOs submitted correspondences to the attention of Plaintiffs, individually and respectively, on behalf of DMAS and as agents of DMAS, indicating that the Defendant-MCOs were terminating the Plaintiffs' Medicaid contracts ("Termination Notices").

85.     The Termination Notices applied to any and all Medicaid claims submitted by Plaintiffs. None of the Plaintiffs had previously received any prior correspondence from Defendant-MCOs, DMAS, or any related state or federal agency informing them of any concerns or issues associated with Medicaid billing prior to the Termination Notices.

86.     Preliminary Injunction ("PI"), and Motion for Stay Defendant-MCOs' decisions to terminate the Plaintiff's Medicaid contracts (the "TRO, PI, and Motion to Stay," attached as Ex.

3). In support of Plaintiff's requests for stay Under numerous Supreme Court holdings, most notably the Court's holding in *Board of Regents v. Roth*, 408 U.S. 564 (1972)*,* the right to due process under the law only arises when a person has a property or liberty interest at stake. *See also Bowens v. N.C. Dept. of Human Res.*, 710 F.2d 1015, 1018 (4th Cir. 1983)*.*

87.    In determining whether a property interest exists a Court must first determine that there is an entitlement to that property.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)*.*

88.    Unlike liberty interests, property interests and entitlements are not created by the Constitution. Instead, property interests are created by federal or state law and can arise from statute, administrative regulations, or contract. *Bowens* at 710 F.2d at 1018.

89.    Specifically, the Fourth Circuit Court of Appeals has determined that North Carolina Medicaid providers have a property interest in continued provider status. *Bowens*, 710 F.2d 1018. In *Bowens*, the Fourth Circuit recognized that North Carolina provider appeals process created a due process property interest in a Medicaid provider's continued provision of services and could not be terminated "at the will of the state." The Court determined that these due process safeguards, which included a hearing and standards for review, indicated that the provider's participation was not "terminable at will." The Court held that these safeguards created an entitlement for the provider, because it limits the grounds for his/her termination such that the contract was not terminable "at will" but only for cause, and that such cause was reviewable. The Fourth Circuit reached the same result in *Ram v. Heckler*, 792 F.2d 444 (4th Cir. 1986), two years later.

90.    Not only do Plaintiffs have common law rights as described, their rights are reflected in the Code of Virginia and the Virginia Administrative Code, including but not limited

to 12 VAC 30-20-500 *et seq.* (including 12 VAC 30-20-540), 12 VAC 30-121-200 et seq., §32.1-325, *et seq.* of the Code of Virginia, and the Virginia Administrative Process Act, §2.2-4000.

91.     The Providers' Patient population relies heavily on the Virginia Medicaid program. The inability to access specialty genetic services in their community is particularly harmful to the Providers' most vulnerable patients, including, but not limited to, the following:

- Children suffering from mental illnesses, such as schizophrenia, bipolar, and/or severe mental debilitations;

- Adults suffering from mental illnesses, such as schizophrenia, bipolar, and/or severe mental debilitations;

- High risk Medicaid recipients involved in legal issues with the potential of jail time;

- Adults and children suffering from substance abuse, including alcohol and drug dependency;

- Children with impairments that make them unable to function in mainstream classrooms or family residents without ongoing behavioral health care treatment; and,

- Adults with severe mental health conditions and disabilities requiring diagnosis, treatment, counseling and management for daily functioning.

92.     Despite the demonstrations stated above, including the shortage of providers, as admitted by DMAS, the Plaintiffs received correspondence from the Defendant-MCOs terminating their Medicaid contracts; thus, decreasing the number of providers by approximately 90%.

93.     The Plaintiffs remain in good standing with the Medicaid Program and DMAS. There is no allegation of fraud, no allegation of services rendered with subpar quality, and/or no allegations of services being rendered without medical necessity.

94.     These terminations are arbitrary, capricious, outside the MCOs' scope of legal authority, erroneous, and without due cause.

## CLAIMS FOR RELIEF

**CLAIM I – MEDICAID ACT (TITLE XIX OF THE SOCIAL SECURITY ACT)**

95.     Plaintiffs hereby incorporate paragraphs one through 48 above.

96.     Medicaid recipients have a private right of action under 42 U.S.C. § 1983 to challenge a state Medicaid agency's exclusion of a qualified provider from the Medicaid program.

97.     42 U.S.C. § 1396a unambiguously creates private rights that are presumptively enforceable under 42 U.S.C. § 1983.

98.     The Plaintiffs are "qualified providers" for purposes of the 42 U.S.C. § 1396a(a)(23) "freedom of choice" analysis.

99.     Defendant-MCOs' actions violate 42 U.S.C. § 1396a(a)(23) by denying the Providers' Patients the right to choose any willing, qualified health care provider in the Medicaid program. In particular, under 42 U.S.C. § 1983 the Plaintiff Patients argue that by excluding the otherwise-qualified providers from the state Medicaid program, Defendants are depriving them of their rights under 42 U.S.C. § 1396a to obtain medical services from "any institution, agency, community pharmacy, or person, qualified to perform the service or services required… who undertakes to provide him such services…." 42 U.S.C. § 1396a(a)(23); *see also* 42 C.F.R. § 431.51(b)(1) (requiring that a state plan provide that "a recipient may obtain Medicaid services from any institution . . . that is [q]ualified to furnish the services[] . . . and [w]illing to furnish them to that particular recipient").

100.     The violation of a Medicaid's recipients' statutory right under 42 U.S.C. § 1396a(a)(23) to freely choose a qualified Medicaid provider necessarily constitutes irreparable

harm for the purposes of the preliminary injunction analysis.

101.    Additionally, the termination of Plaintiff's Medicaid contracts is equally injurious of the Patients' "freedom of choice" rights. In particular, the Medicaid "freedom of choice" guarantee must mean more than that qualified providers are allowed to provide treatment to Medicaid recipients (if they wish to participate in the program); *those providers must be paid the promised rates for that treatment*. Defendants' terminations "without cause" of Plaintiffs effectively violates the Patients' "freedom of choice" statutory right under 42 U.S.C. § 1396a(a)(23), just as much as its termination of the Plaintiffs from participating in the Medicaid program.

102.    By definition, Defendants did not terminate the Plaintiffs' participation status because they were unqualified; if that was the case, then it would have been a "for cause" termination.

103.    There is no dispute that the Plaintiffs previously were qualified to participate in the Commonwealth of Virginia's Medicaid program, and they have been for more than 50 years. There is no suggestion that anything has changed in the past several months to make them now unqualified.

104.    In the absence of any evidence or indication that the Plaintiffs suddenly became unqualified, Defendants' arbitrary and capricious decision to terminate their contracts "without cause" is a blatant violation of the Patients' right to freely choose a qualified provider willing to provide them services as a Medicaid recipient.

### CLAIM II – FOURTEENTH AMENDMENT EQUAL PROTECTION

105.    Plaintiffs hereby incorporate paragraphs one through 99 above.

106.    Defendants' actions violate the Plaintiffs' rights by singling them out for

unfavorable treatment without adequate justification.

107.    Defendants' termination of the Plaintiffs' Medicaid contract without granting a provider hearing violates the "administrative review" requirement under 42 C.F.R. § 455.23(a)(3), and the Plaintiffs' rights to due process. Defendants cannot terminate Plaintiffs' Medicaid contracts "without cause."

108.    Defendants have informed Plaintiffs that there is no appeal of the termination of their Medicaid contracts. While Virginia has an "administrative review" process under 42 U.S.C. § 455.23(a)(3), it provides no meaningful way for the Plaintiffs to investigate and challenge the terminations, especially because the terminations are "without cause."

109.    Defendants have no reason as to what facts underlie the terminations. Defendants cannot provide the Plaintiffs with a hearing to challenge the evidence supporting the allegations. These terminations are not in accordance with the federal regulations. Defendants, thus, will not give the Plaintiffs the process they are due under the Fourteenth Amendment.

110.    Defendants' termination of Plaintiffs' Medicaid contract must be overturned. The Plaintiffs are entitled to injunctive relief without further delay.

111.    The Plaintiffs have spent years providing behavioral health care services to Virginia's Medicaid recipients. The Plaintiffs terminations are imminent and the Plaintiffs cannot provide their services "for free." Without this injunction, the Plaintiffs will be forced to close their doors for good, with all the irreversible damage that will entail.

## CLAIM III – DISCRIMINATION AGAINST PLAINTIFFS

112.    42 C.F.R. §438.12 states that an MCO "may not discriminate in the participation, reimbursement, or indemnification of any provider who is acting within the scope of his or her license or certification under applicable State law, solely on the basis of that license or certification.

If an MCO…declines to include individual or groups of providers in its provider network, it must give the affected providers written notice of the reason for its decision."

113.    It is illegal to discriminate based upon someone's race or size of business as these qualities constitute protected characteristics.

114.    All named Plaintiffs are African American. Most of the Plaintiffs represent small companies.

115.    Upon information and belief, the 3 - 5 behavioral health care providers that Defendants are allowing to continue to participate in Medicaid are white-owned companies.

116.    Defendants have discriminated against Plaintiffs through disparate treatment and disparate impact by terminating their Medicaid contracts "without cause."

117.    Plaintiffs are qualified in all aspects to provide Medicaid services.

118.    Plaintiffs are being terminated from the Defendants' contracts in spite of being fully qualified.

### CLAIM IV – DISCRIMINATION AGAINST MEDICAID RECIPIENTS

119.    42 C.F.R. §431.51 mandates that Medicaid recipients have a free choice of provider from "any qualified Medicaid provider that undertakes to provide the services to them."

120.    Plaintiff-providers are all qualified as Medicaid providers.

121.    Plaintiff-providers want to provide Medicaid services to Medicaid recipients in need of behavioral health care services.

122.    Defendants are discriminating against Plaintiff-recipients by not allowing Plaintiff-recipients the freedom to choose their provider.

### CLAIM V – BREACH OF CONTRACT

123.    Defendants have breached their contracts with Plaintiffs. All Plaintiff-providers

have a valid, existing contract with one or more of the Defendants.

124.    Plaintiff-providers have performed all duties under the contracts.

125.    All Plaintiff-providers' contracts incorporate federal and state Medicaid regulations.

126.    Defendants have breached the Plaintiff-providers' Medicaid contracts by terminating the Plaintiff-providers' Medicaid contracts without cause.

127.    The Plaintiff-providers' have suffered and will suffer irreparable harm, including monetary damages due to Defendants' breach of contract.

## JURY DEMAND

Plaintiffs hereby demand a jury for the trial of this matter.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs respectfully request that this Court do the following:

1.    Accept jurisdiction of this cause and set it for hearing;

2.    Issue a declaratory judgment that the Defendants' actions violate the Medicaid Act, and specifically, the "freedom of choice" right afforded thereunder;

3.    Issue a declaratory judgment that the Defendants' actions violate the Fourteenth Amendment;

4.    Issue preliminary[13] – followed by permanent – injunctive relief, without bond, enjoining Defendants, their agents, employees, appointees, delegates, or successors from terminating the Providers' Medicaid provider agreements, with or without cause;

---

[13] Plaintiffs note that they are filing a Motion for Temporary Restraining Order and Permanent Injunction contemporaneously with this Complaint.

5.      Grant Plaintiffs attorneys' fees, reasonable costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and

6.      Grant such further relief as the Court deems just and proper.

Respectfully submitted September _____, 2019.

POTOMAC LAW GROUP, LLP

/s/ *Stacey Rose Harris*
Bernard J. DiMuro, (VSB #18784)
Stacey Rose Harris, (VSB #65887)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
(703) 684-4333
(703) 548-3181 (Facsimile)
bdimuro@dimuro.com
sharris@dimuro.com